IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTONIO DAMARCUS WOODSON,
          Petitioner,

vs.                                          Case No.:  3:16cv180/RV/EMT

JULIE L. JONES,
          Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (ECF No. 1). Respondent filed an answer and relevant portions of the state court record (ECF No. 21).  Petitioner filed a reply and an amended reply (ECF Nos. 24, 25).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show

that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established

by the state court record (*see* ECF No. 21).[1]  Petitioner was charged in the Circuit

Court in and for Santa Rosa County, Florida, Case No. 2010-CF-548, with one count

of battery on a law enforcement officer (Ex. A at 5).  Following a jury trial on October

10, 2012, Petitioner was found guilty as charged (Ex. A at 75, Ex. B).  Following the

verdict, the trial court sentenced Petitioner to two (2) years of imprisonment, to run

consecutively to the sentence he was currently serving, with credit for 394 days (Ex.

A at 90, 93–97, Ex. B at 145–47).

Petitioner, through counsel, appealed the judgment to the Florida First District

Court of Appeal ("First DCA"), Case No. 1D12-5156 (Ex. A at 100).  Petitioner's

counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting

that there were no meritorious arguments to support the contention that reversible

error occurred in the trial court (Ex. C).  Petitioner filed a pro se initial brief (Ex. F).

---

[1] Citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 21).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

The First DCA affirmed the judgment per curiam without written opinion on August 8, 2013 (Ex. G).  Woodson v. State, 118 So. 3d 810 (Fla. 1st DCA 2013) (Table).  The mandate issued September 4, 2013 (Ex. H).

On December 7, 2012, while the direct appeal was pending, Petitioner filed a pro se motion for reduction or modification of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. I at 1–4).  The state circuit court struck the motion because Petitioner was represented by counsel at the time he filed it (*id.* at 9–10).  Petitioner appealed the order to the First DCA, Case No. 1D13-0344 (Ex. J).  The First DCA affirmed the decision per curiam without written opinion on April 9, 2013 (Ex. K).  Woodson v. State, 145 So. 3d 103 (Fla. 1st DCA 2013) (Table).  The mandate issued July 18, 2013 (Ex. N).

On September 16, 2013, Petitioner filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. O at 7–18).  In an order rendered October 7, 2013, the state circuit court dismissed the motion, because it failed to contain a proper oath and failed to comply with the certification requirement of Rule 3.850, without prejudice to Petitioner's filing an amended motion within sixty (60) days (*id.* at 40–41).  Petitioner filed an amended motion on October 28, 2013 (*id.* at 42–52).  On December 10, 2013,

the circuit court dismissed the amended motion for the same reasons it dismissed Petitioner's first motion, without prejudice to Petitioner's filing a second amended motion within sixty (60) days  (*id.* at 54–55).  Petitioner filed a second amended motion on January 30, 2014 (*id.* at 59–72).  The state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing a third amended motion within sixty (60) days (*id.* at 76–79).  Petitioner filed a third amended Rule 3.850 motion on August 11, 2014 (*id.* at 80–100).  The circuit court summarily denied the motion on October 12, 2015 (*id.* at 139–50).  Petitioner appealed the decision to the First DCA, Case No. 1D15-5183 (Ex. P).  The First DCA affirmed the decision per curiam without written opinion on February 12, 2016 (Ex. R).  <u>Woodson v. State</u>, 184 So. 3d 525 (Fla. 1st DCA 2016) (Table).  The mandate issued March 9, 2016 (Ex. S).

Petitioner filed the instant federal habeas action on April 21, 2016 (ECF No. 1).

II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.  Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law,"

namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court

precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* <u>Woods</u>, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See* <u>Panetti v. Quarterman</u>, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. <u>Williams</u>, 529 U.S. at 409; *see* <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

... 

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  <u>Harrington</u>, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

<u>Woods</u>, 135 S. Ct. at 1376 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual

determinations as unreasonable merely because we would have reached a different conclusion in the first instance." Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g.*, Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *See* Cave v. Sec'y for Dep't of Corr., 638 F.3d 739 (11th Cir. 2011). However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an

insufficient factual basis for affirming the state court's decision." <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti</u>, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claims.

## III.    PETITIONER'S CLAIMS

   A.    <u>Ground One:  "Insufficiency of evidence—Due Process Clause requires the State to prove each and every element beyond a reasonable doubt."</u>

Petitioner claims that the State failed to present sufficient evidence to prove the "bodily harm" element of the battery charge (ECF No. 1 at 5; ECF No. 24 at 3).[2] Petitioner alleges a medical report prepared by Nurse Raines stated that upon her examination of the victim, Officer Russano, she observed no sign of injury, provided

---

   [2] References to the parties' pleadings are to the page numbers automatically assigned by the court's electronic docketing system.

no medical treatment, and did not notify a physician (*id.*).  Petitioner alleges this

evidence conclusively refuted Officer Russano's testimony that he was bleeding as a

result of Petitioner's striking him (*id.*).  Petitioner additionally alleges that the intent

element of the battery charge was conclusively refuted by Officer Kosmos' testimony

that Petitioner had no prior behavioral incidents (*id.*).

Respondent asserts Petitioner presented this claim to the state court on direct

appeal (ECF No. 21 at 13).  Respondent asserts the First DCA adjudicated the merits

of the claim, and the adjudication was not contrary to or an unreasonable application

of clearly established federal law (*id.*).

1.    Clearly Established Federal Law

As an issue of federal law, Petitioner's claim derives from the Fourteenth

Amendment due process requirement that the evidence presented at trial be sufficient

to convict; that is, the State must prove beyond a reasonable doubt every fact that

constitutes an essential element of the crime charged against the defendant.  *See* In re

Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).  The proper

inquiry is not whether the reviewing court itself believes that the evidence established

guilt beyond a reasonable doubt but "whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443

U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citation omitted); *see also*

<u>Conklin v. Schofield</u>, 366 F.3d 1191, 1200 (11th Cir. 2004). The evidence need not

rule out every theory except that which signifies guilt beyond a reasonable doubt;

"[t]he simple fact that the evidence gives some support to the defendant's theory of

innocence does not warrant the grant of habeas relief." <u>Wilcox v. Ford</u>, 813 F.2d

1140, 1143 (11th Cir. 1987). Moreover, because jurors are free to evaluate the

credibility of testimony and the weight of the evidence, the court should assume that

all conflicting inferences were resolved against the defendant. *See id.* "It is only

where, after viewing the evidence in its most favorable light and making all credibility

decisions in favor of the state the evidence still fails to at least preponderate in favor

of the state, that we become concerned with conflicting inferences." <u>Cosby v. Jones</u>,

682 F.2d 1373, 1383 (11th Cir. 1982).

        2.     Federal Review of State Court Decision

        Petitioner presented his challenge to the sufficiency of the evidence in his initial

brief on direct appeal (Ex. F at 8–10). The First DCA affirmed the conviction without

stating its reasons for rejecting Petitioner's claim (Ex. G).

"[T]he summary nature of a state court's decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also* Harrington, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision.  *See* Harrington, 562 U.S. at 98.  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 562 U.S. at 102; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

To prove the crime of battery on a law enforcement officer, the State was required to prove the following four elements beyond a reasonable doubt:

1.     Petitioner intentionally touched or struck the victim against his will OR caused bodily harm to the victim[3];

2.     The victim was a law enforcement officer;

3.     Petitioner knew that the victim was a law enforcement officer; and

4.     The victim was engaged in the lawful performance of his duties when the battery was committed.

*See* Fla. Standard Jury Instructions in Criminal Cases, Part Two:  Instructions on Crimes, Assault and Battery § 8.11.

At Petitioner's trial, the State presented testimony from John Russano, the victim of the battery (Ex. B at 62–77).  Officer Russano testified that he was a corrections officer at Santa Rosa Correctional Institution.  Officer Russano testified that on March 16, 2010, he escorted Petitioner to the recreation yard.  Russano testified that Petitioner was handcuffed behind his back, and Russano had a "custodial hold" on Petitioner, meaning, he was gripping Petitioner's right arm with his left hand and directing Petitioner.  Officer Russano testified that when he and Petitioner arrived at the recreation yard, someone said something that caused Petitioner to react.  Officer

---

[3] As discussed *infra*, the jury in this case was instructed only on the "intentional touch or strike" alternative of element one, even though Petitioner was charged under both alternatives.

Case No.:  3:16cv180/RV/EMT

Russano testified that he told Petitioner to be quiet, but Petitioner began "talking over" him and yelling. Russano testified that he again told Petitioner to be quiet and warned Petitioner that he would be returned to his cell if he persisted. Officer Russano testified that Petitioner still continued to talk over him. Russano testified that he attempted to return Petitioner to his cell, but Petitioner jerked away from his custodial hold. Officer Russano testified that he attempted to grab Petitioner, and as he was doing so, Petitioner lowered his head and "head butted" Russano on the left cheek area of his head. Russano testified that as he attempted to put Petitioner on the ground, Petitioner kicked him twice in the leg. Officer Russano testified that Officer Kosmos assisting in putting Petitioner on the ground and shackling his legs. Russano testified that he went to the medical department because he was bleeding on the left side of his cheek bone.

Joseph Kosmos testified that he was working as a corrections officer at Santa Rosa Correctional Institution on March 16, 2010 (Ex. B at 78–83). Officer Kosmos testified that he saw Petitioner "head butt" Officer Russano. Kosmos testified he was approximately twenty (20) feet away from Petitioner and Russano at the time. Officer Kosmos testified that prior to that, he had never had any problem with Petitioner.

Laura Raines testified she was employed as a Licensed Practical Nurse at Santa Rosa Correctional Institution (Ex. B at 84–91).  Nurse Raines testified that part of her job was to evaluate people who were involved in a physical incident.  Nurse Raines testified that FDOC policy required her to assess everyone involved, including inmates and officers.  Nurse Raines testified that she evaluated Officer Russano and Petitioner on March 16, 2010.  Raines testified that when she evaluated Officer Russano, she observed a contusion to his left cheek bone and an abrasion that measured approximately 1-1/2 inch by 1/2 inch by 1/4 inch.  Nurse Raines testified she did not observe any injury to Officer Russano's left knee.  Nurse Raines testified she did not observe any injuries to Petitioner.  Nurse Raines' medical reports were admitted into evidence (Ex. A at 85–88).

The First DCA's rejection of Petitioner's challenge to the sufficiency of the evidence could have been based upon the theory that, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of battery on a law enforcement officer beyond a reasonable doubt. Officer Russano's unrefuted testimony that Petitioner ignored Russano's commands to be quiet, pulled away from Russano's custodial hold, lowered his head and "head butted" Russano on his face, and then kicked Russano, would permit a rational trier

of fact to conclude, beyond a reasonable doubt, that Petitioner intentionally touched or struck Correctional Officer Russano against his will.

Petitioner failed to demonstrate that the First DCA's rejection of his due process claim was contrary to or an unreasonable application of clearly established federal law.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B.    Ground Two:  "Jury instruction—fundamental error—omits material "bodily harm" element alleged in the charging information."

Petitioner alleges the charging document alleged alternative theories of battery, i.e., that Petitioner intentionally touched or struck Officer Russano against his will, or Petitioner intentionally caused bodily harm to Russano (ECF No. 1 at 7; ECF No. 1-1 at 3; ECF No. 24 at 3).  Petitioner alleges the jury was instructed on only one theory, that Petitioner intentionally touched or struck Officer Russano against his will (*id.*).  Petitioner alleges the jury rendered a general verdict, which did not specify the theory upon which the verdict was based (*id.*).  Petitioner alleges Nurse Raines' testimony refuted the theory that Officer Russano suffered "bodily harm" (*id.*). Petitioner contends the jury instruction's omission of the "bodily harm" element constituted fundamental error (*id.*).

Respondent asserts Petitioner presented this claim to the state court on direct appeal (ECF No. 21 at 13–14).  Respondent argues the State charged Petitioner with

"actually and intentionally touching or striking [victim] without consent of [victim] **or** by intentionally causing bodily harm to [victim]." Respondent contends the State was not required to prove both theories because when there are alternative theories of guilt charged in an information, the State may properly abandon one theory if the trial evidence fails to show proof of that theory. Respondent asserts the trial court's instructing the jury on only the "touch or strike" theory was not erroneous; therefore, the First DCA's rejection of Petitioner's claim is entitled to deference.

      1.    Clearly Established Federal Law

Petitioner's challenge to the jury instruction relies on the conjunction of three different legal principles. First, it is a commonplace of criminal law that a conviction violates due process if the jury did not have to find the elements necessary for a guilty verdict beyond a reasonable doubt. *See, e.g.*, Sandstrom v. Montana, 442 U.S. 510, 526, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); In re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Second, harmless error analysis applies where a jury instruction omits an element of the offense. *See* Neder v. United States, 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). Third, "a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested

exclusively on the insufficient ground." <u>Zant v. Stephens</u>, 462 U.S. 862, 881, 103 S.

Ct. 2733, 77 L. Ed. 2d 235 (1983); *see also* <u>Stromberg v. California</u>, 283 U.S. 359,

367–68, 51 S. Ct. 532, 75 L. Ed. 1117 (1931).   In such circumstances, it is impossible

to determine on which basis the jury reached its verdict, so deficiency in only one

basis requires the entire verdict to be set aside.  <u>Sandstrom</u>, 442 U.S. at 526; *see also*

<u>Stromberg</u>, 283 U.S. at 368 ("If any of the [bases] in question is invalid under the

Federal Constitution, the conviction cannot be upheld.").

      2.     Federal Review of State Court Decision

Petitioner raised his jury instruction claim in his initial brief on direct appeal

(Ex. F at 11).  The First DCA affirmed the conviction without stating its reasons for

rejecting the claim (Ex. G).

The charging document in Petitioner's case charged the following:

> **ANTONIO WOODSON**, **on or about March 16, 2010**, at and in Santa
> Rosa County, Florida, did unlawfully and knowingly commit a battery
> upon **John Rossano**, a law enforcement officer, or a firefighter, or an
> emergency medical care provider, employed by the **Florida Department
> of Corrections**, by actually and intentionally touching or striking **John
> Rossano** without the consent of **John Russano** or by intentionally
> causing bodily harm to **John Russano**, while was [sic] engaged in the
> lawful performance of his or her duties, in violation of Section 784.03
> and 784.07(2)(b), Florida Statutes.

(Ex. A at 20).  The State thus charged two independent, alternative theories of battery, the "intentionally touching or striking" theory, and the "intentionally causing bodily harm" theory.  After the close of the evidence, the court and counsel discussed the jury instructions (Ex. B at 97–100).  The State proposed an instruction on only the "intentionally touching or striking" theory of battery, and defense counsel did not object (*id.* at 98).  The trial court instructed the jury, both orally and in writing, on only the "intentionally touching or striking" theory as follows:

> To prove the crime of Battery on a Law Enforcement Officer, the State must prove the following four elements beyond a reasonable doubt:
>
> 1.    ANTONIO WOODSON intentionally touched or struck OFFICER JOHN RUSSANO against his will.
>
> 2.    OFFICER JOHN RUSSANO was a law enforcement officer.
>
> 3.    ANTONIO WOODSON knew OFFICER JOHN RUSSANO was a law enforcement officer.
>
> 4.    OFFICER JOHN RUSSANO was engaged in the lawful performance of his duties when the battery was committed.

(*see* Ex. A at 77–78; Ex. B at 127–28).

This was <u>not</u> a case where the jury was instructed on an uncharged theory of battery.  Petitioner was charged under alternative theories, including the "intentionally touched or struck" theory on which the jury was instructed.  Further, this was <u>not</u> a

case where the jury was instructed that it could rely on one of two independent grounds to convict, and one of those grounds was insufficient.  The jury was instructed on only one ground, the "touched or struck" theory of battery.  Further, there was sufficient evidence to convict on this ground, namely, Officer Russano's unrefuted testimony that Petitioner ignored Russano's commands to be quiet, pulled away from Russano's custodial hold, lowered his head and "head butted" Russano on his face, and then kicked Russano twice.  No constitutional error occurred in relation to the jury instruction on battery.

The First DCA's rejection of Petitioner's challenge to the jury instruction was not contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to federal habeas relief on Ground Two.

### C.    Ground Three:  "Discovery violation—State suppressed favorable and material evidence upon request."

Petitioner alleges defense counsel filed a request for the following discovery: (1) security surveillance video, (2) use of force video, (3) photo of Officer Russano's face, and (4) disciplinary report and hearing information (ECF No. 1 at 8; ECF No. 1-1 at 2; ECF No. 24 at 3–4).  Petitioner alleges the videos and photo would have refuted the first and fourth elements of the charge, because the evidence would have conclusively refuted the "bodily harm" and "engaged in lawful performance of his

duties" elements.  Petitioner alleges the use of force video and photo would have shown whether Officer Russano was bleeding after the incident, which was relevant to the issue of the "bodily harm" element and the assessment of victim injury points at sentencing.  Petitioner alleges the surveillance video would have shown that Officer Russano failed to comply with an FDOC policy which required the presence of two officers at the cell door prior to the door being opened.  Petitioner alleges the videos also would have refuted the time line of events as described in the officers' incident reports, which the State provided in discovery.  Petitioner alleges the incident reports stated that the events occurred at 7:30 a.m. and 7:32 a.m., and that Officer Hetherington "began video recording procedures" at 7:35 a.m.  Petitioner alleges the videos would have shown whether the events actually occurred within the time frame stated by the officers in the incident reports.  Petitioner alleges the disciplinary report and hearing information would have established the existence of the security camera, the use of force video, and the photo taken after the incident.  Petitioner alleges a photo of the right side of Officer Russano's face was used at the disciplinary hearing, which would have refuted Russano's statements in his incident report, deposition, and trial testimony, that Petitioner head-butted him on the left side of his face.  Petitioner

alleges the State's suppression of the videos, photos, and disciplinary hearing material prevented him from presenting a complete defense.

Respondent asserts Petitioner presented this claim to the state court on direct appeal (ECF No. 21 at 14–16).  Respondent argues Petitioner's allegations are insufficient to show a <u>Brady</u> violation, because he simply identifies things that may or may not exist and concludes that they are exculpatory.  Respondent contends the First DCA's rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law.

> 1.    Clearly Established Federal Law

As recognized in <u>Brady v. Maryland</u>, 373 U.S. 83, 83, S. Ct. 1194, 10 L. E.d 2d 215 (1963), and its progeny, principles of due process dictate that, in a criminal proceeding, the prosecution must disclose evidence favorable to the defendant.  <u>Brady</u>, 373 U.S. at 87; <u>Banks v. Dretke</u>, 540 U.S. 668, 691, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004).  To establish a <u>Brady</u> violation, a defendant must prove three essential elements:  (1) that the evidence was favorable to the defendant, either because it is exculpatory or impeaching; (2) that the prosecution suppressed the evidence, either willfully or inadvertently; and (3) that the suppression of the evidence resulted in prejudice to the defendant.  <u>Turner v. United States</u>, 582 U.S. —, 137 S. Ct. 1885,

1893, 198 L. Ed. 2d 443 (2017); <u>Banks</u>, 540 U.S. at 691; <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).

To establish prejudice, the defendant must show that the suppressed evidence was material. *See* <u>Banks</u>, 540 U.S. at 691. The evidence rises to the level of materiality within the meaning of <u>Brady</u> when there is a reasonable probability that, had the suppressed evidence been disclosed, the result of the proceeding would have been different. *See* <u>Turner</u>, 137 S. Ct. at 1893. A "reasonable probability of a different result" is one in which the suppressed evidence "undermines confidence in the outcome of the trial." <u>Turner</u>, 137 S. Ct. at 1893 (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 433–34, 115 S. Ct. 1555, 1565, 131 L. Ed. 2d 490 (1995) (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985))) (internal quotations omitted).

In determining whether disclosure of the suppressed evidence might have produced a different result, the court must consider the "totality of the circumstances." <u>Bagley</u>, 473 U.S. at 683. The court must "examine the trial record, 'evaluat[e]' the withheld evidence 'in the context of the entire record,' and determine in light of that examination whether 'there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" <u>Turner</u>, 137 S. Ct.

at 1893 (citation omitted) (quoting <u>United States v. Agurs</u>, 427 U.S. 97, 112, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), and <u>Cone v. Bell</u>, 556 U.S. 449, 470, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009)).

 2. Federal Review of State Court Decision

Petitioner raised his <u>Brady</u> claim in his initial brief on direct appeal (Ex. F at 6–7).  The First DCA affirmed the conviction without stating its reasons for rejecting the <u>Brady</u> claim (Ex. G).  Petitioner subsequently presented the <u>Brady</u> issue again in Ground Three of his third amended Rule 3.850 motion (Ex. O at 88).  The state circuit court adjudicated the merits of the <u>Brady</u> claim as follows:

> To the extent the Defendant is attempting allege a constitutional claim under <u>Brady</u>,[FN 1] it is facially insufficient.  To set forth a facially sufficient <u>Brady</u> claim, the Defendant must demonstrate that: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.  <u>Way v. State</u>, 760 So. 2d 903 (Fla. 2000) (citations omitted).

> [FN 1: <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).]

> It is not clear in the Defendant's allegation whether he knew of this purported evidence prior to trial.  The Court would note that when a defendant is aware of this purported evidence prior to trial, no <u>Brady</u> violation is present.  "A <u>Brady</u> claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the Defendant."  <u>Maharaj v. State</u>, 778 So. 2d 944, 954 (Fla. 2000).

      In any case, the Defendant has not alleged a factual basis for the conclusion that this evidence actually exists. The Defendant essentially states that a request for any such evidence was made by the Defendant and no such evidence was produced by the State. That the fact that [sic] evidence was not produced does not show that it actually existed. Demonstrating that the evidence exists at all is an "obvious prerequisite to demonstrating that the [evidence] was withheld . . ." Beasley v. State, 18 So. 3d 473, 48 Fla. 2009). The Defendant has put forth no sufficient allegation that the evidence at issue was suppressed by the State.

      Finally, the Defendant has not sufficiently alleged how the lack of this evidence prejudiced him in light of the evidence presented at trial that the Defendant committed battery on a correctional officer. In other words, the Defendant's allegations do not show there is a reasonable probability that this purportedly suppressed evidence would have produced a different result at trial. Rogers v. State, 782 So. 2d 373 (Fla. 2001). The Defendant's allegations do not show that the State willfully or inadvertently suppressed favorable, material evidence. The Defendant's conclusory allegations fail to specifically set forth that the State had any knowledge of this evidence and how he was prejudiced. This is insufficient. See Davis v. State, 26 So. 3d 519 (Fla. 2009).

(Ex. O at 142–43). The First DCA affirmed the decision without written opinion (Ex.

R).

      The last state court to have adjudicated the merits of Petitioner's Brady claim was the First DCA in the Rule 3.850 appeal. Therefore, that is the adjudication that must be reviewed under § 2254(d).

      The state court reasonably concluded that Petitioner failed to show a reasonable probability that the allegedly suppressed evidence would have produced a different

result at trial.  With regard to the surveillance video, Petitioner does not allege that the video captured the incident in the recreation yard; rather, Petitioner alleges the video would have shown that Officer Russano violated FDOC policy by removing Petitioner from his cell without the presence of a second officer.[4]  Petitioner alleges this alleged violation of FDOC policy would have refuted the fourth element of battery, i.e., that Officer Russano was engaged in the lawful performance of his duties when the battery was committed.

Initially, Petitioner's allegation as to what the surveillance video showed is purely speculative.  He did not proffer any evidence of the content of the video from a person who viewed it.  Furthermore, the FDOC policy governing an officer's escort of a close management inmate, which was the duty being performed by Officer Russano when Petitioner head-butted and kicked him, required that there be one officer with the inmate when the inmate is out of his cell within the unit.  *See* Fla. Admin. Code r. 33-601.800(14)(d); *see also* Tillman v State, 934 So. 2d 1263, 1271 (Fla. 2006) (when determining whether the evidence proved the "lawful execution" elements of sections 784.07(2) and 843.01, we must apply the "legal standards governing the duty undertaken by the law enforcement officer at the point that an

---

[4] The Florida Department of Corrections' report from its internal investigation of the incident verifies that there was no video camera present in the area of the incident (*see* Ex. A at 1).

assault, battery, or act of violent resistance occurs."). Thus, the surveillance video of Petitioner's cell front would have not refuted the fourth element of the charge. The surveillance video does not support a <u>Brady</u> claim.

Petitioner also alleges that the use-of-force video, as well as the photo of Officer Russano's face, would have refuted the "bodily harm" element, because it would have shown that Officer Russano's face was not bleeding. However, as previously discussed, the State abandoned the "bodily harm" theory, and the jury did not consider it. Further, to the extent Petitioner contends the video and photo would have impeached Russano's testimony regarding his injuries, the jury heard testimony from Nurse Raines regarding Officer Russano's injuries, and the jury saw the medical record documenting Officer Russano's injuries. The jury was thus able to assess Russano's credibility regarding the nature and severity of his injury. To the extent Petitioner alleges the video and photo could have been used to object to the assessment of victim injury points on Petitioner's sentencing scoresheet, the testimony and medical report of Nurse Raines showed that Officer Russano suffered an abrasion and contusion on his cheek. This was sufficient to warrant assessment of victim injury points for "slight" injury, which was the lowest level that could be assessed (*see* Ex. A at 91).

Petitioner also contends that the use-of-force video and the surveillance video would have impeached the officers' statements in their incident reports, that the incident occurred from 7:30–7:32 a.m.   Petitioner failed to show that either of the videos would have impeached either officer's trial testimony.  Officer Kosmos did not testify regarding the timing of the incident.  Officer Russano's testimony on this issue was the following:

> Q [by defense counsel].   And I know we're sitting here talking about it in great detail but the whole thing actually happened pretty quick, right?
>
> A.    Yes.
>
> . . . .
>
> Q.    How long did the whole incident take?
>
> A.    It wouldn't have took [sic] more than—you know, it happened so fast—about five minutes, ten minutes at most.
>
> Q.    Just a pretty quick incident?
>
> A.    My part of it, yes,  It was pretty quick.

(Ex. B at 75–77).  Even if Officer Russano stated in his FDOC incident report that the battery occurred during a three-minute period, from 7:30–7:32 a.m., this prior statement was not in fact inconsistent with his trial testimony that it happened "so fast," or for about five minutes but no more than ten.  Therefore, petitioner failed to show that either video had impeachment value in this respect.

Case No.:  3:16cv180/RV/EMT

Finally, with regard to records concerning the disciplinary report and disciplinary hearing, Petitioner alleges only that this evidence would have established the existence of the other non-disclosed evidence, i.e., the videos and photo. But because the other evidence did not satisfy the favorability and/or prejudice prong of the <u>Brady</u> standard, records which merely established the existence of other evidence are also insufficient to show a <u>Brady</u> violation.

Petitioner failed to demonstrate that the state courts' rejection of his <u>Brady</u> claim was contrary to or an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to habeas relief on Ground Three.

> D.    <u>Ground Four: "Speedy trial violation—thirty (30) month delay between the filing of the information and trial was unreasonable and attributable to the State."</u>

Petitioner alleges the charging document was filed on April 28, 2010, he was arraigned on September 14, 2011, and trial did not commence until October 10, 2012 (ECF No. 1 at 10; ECF No. 1-1 at 2; ECF No. 24 at 2–3). Petitioner alleges his trial was held beyond the 175-day period set forth in Rule 3.191 of the Florida Rules of Criminal Procedure. Petitioner alleges the continuances of the trial date were intentional delays on the part of the State. Petitioner alleges he asserted his

constitutional speedy trial right on March 22, 2010, as noted in a report prepared by the FDOC's Inspector General's Office.

Respondent asserts Petitioner presented this claim to the state court on direct appeal (ECF No. 21 at 16–20). Respondent contends the First DCA's rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law.

> 1.    Clearly Established Federal Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. In determining whether the right to a speedy trial was violated, courts consider: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *See* Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). If the State pursued prosecution with reasonable diligence, then the defendant must show actual prejudice to prevail on a Sixth Amendment speedy trial claim. *See* United States v. Harris, 376 F.3d 1282, 1290 (11th Cir. 2004).

"The first factor serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, [the court] need not conduct the remainder of the analysis." United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999). "A delay

is considered presumptively prejudicial as it approaches one year" from indictment to trial.  United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997); *see also* Harris, 376 F.3d at 1290 (an 18–month delay is presumptively prejudicial).

Different weights are assigned to different reasons for delay.  *See* Barker, 407 U.S. at 531.  A deliberate attempt to hinder the defense is weighted heavily against the State, negligence or overcrowded courts are weighted less heavily against the State, and legitimate reasons like a missing witness justify an appropriate delay.  *Id.* "Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground."  Doggett v. United States, 505 U.S. 647, 656–57, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992).

Even if all three Barker factors weigh against the State, if they do not do so heavily then the petitioner must demonstrate actual prejudice to prevail on a federal speedy trial claim.  *See* United States v. Ingram, 446 F.3d 1332, 1338 (11th Cir. 2006)

2.    Federal Review of State Court Decision

Petitioner raised this claim in his initial brief on direct appeal (Ex. F at 4–5). The First DCA affirmed the decision without written opinion (Ex. G).

To the extent Petitioner's claim is based upon the State's violation of Florida's speedy trial rules, that type of claim is not cognizable on federal habeas review

because it only involves state procedural rules rather than errors of federal constitutional dimension.  Further, the First DCA's rejection of a state-law-based speedy trial claim must be honored by a federal habeas court.  *See* <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (federal habeas court must abide by state court's interpretation of state law); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

　　　With regard to Petitioner's federal speedy trial claim, the First DCA's rejection of the claim was reasonable.  The record confirms Petitioner assertion that the charging document was filed on April 28, 2010 (*see* Ex. A at 5).  The court will assume that the nearly 30-month delay in bringing Petitioner to trial is "presumptively prejudicial," thereby necessitating inquiry into the last three factors of the <u>Barker</u> test. *See* <u>Barker</u>, 407 U.S. at 530 ("The length of the delay [the first factor] is to some extent the triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); <u>Doggett</u>, 505 U.S. at 647, 652 & n.1 (when the delay between arrest or indictment and trial is more than one year, there is a presumption of prejudice sufficient to trigger application of the four-part <u>Barker</u> test as a whole).

The second <u>Barker</u> factor, that is, the reason for the delay, weighs neutrally in the balance here. Petitioner proffered no evidence to support his allegation that the delay was a deliberate attempt by the State to hinder the defense. Further, the state court record indicates that the delay was due, at most, to official negligence, specifically, the local sheriff's department's failure to transport Petitioner to the courthouse from the State correctional institution where Petitioner was imprisoned, despite the prosecutor's obtaining court orders to transport Petitioner (*see* Ex. A at 8–10). When Petitioner was finally transported for an arraignment on September 13, 2011, counsel was appointed for Petitioner (*id.* at 11–13). The court set the case for a "docket day" on December 29, 2011, but the sheriff's department again failed to transport Petitioner on that date, so the case was reset for February 9, 2012 (*id.* at 13, 29). Petitioner was not transported for proceedings on February 9, 2012, April 12, 2012, April 27, 2012, May 7, 2012, or May 16, 2012, (*id.* at 30, 31, 33, 34–37, 38–41). Petitioner was finally transported for a hearing on June 6, 2012, and the court granted defense counsel's motion for an order directing the sheriff's department to hold Petitioner and not return him to the State correctional institution until the criminal charge was resolved (*id.* at 52–62). On July 16, 2012, the court set the trial date as October 10, 2012, likely because the defense desired additional discovery, as

evidenced by the fact that the day after the July 16 hearing, defense counsel filed a Request for Additional Discovery, seeking the materials which are the subject of Petitioner's <u>Brady</u> claim (i.e., the videotapes, photo, and disciplinary materials) (*id.* at 63).  Because the record suggests that the portion of the delay attributable to the State was due to negligence, and there is no evidence of a deliberate attempt to hinder the defense, the second <u>Barker</u> factor weighs neutrally in the speedy trial calculation.

The third <u>Barker</u> factor, the defendant's assertion of his right to speedy trial, does not weigh in Petitioner's favor.  Although a defendant's Sixth Amendment right to a speedy trial is not waived unless the defendant knowingly and voluntarily waives it, *see* <u>Barker</u>, 407 U.S. at 525–29, there is no evidence that Petitioner asserted his right prior to trial.  Petitioner alleges he told an inspector from the FDOC's Inspector General's Office (during the FDOC's internal investigation of the incident) that he wished to assert his speedy trial right, as evidenced by a notation in the Inspector's report.  The report is part of the state court record (*see* Ex. A at 1–4).  The report states, "On March 22, 2010, Inmate Antonio Woodson invoked his Constitutional Rights and declined to make a statement." (*id.* at 3).  This sounds more like an assertion of Petitioner's right against self-incrimination, but even if it encompassed all of Petitioner's constitutional rights, including his right to a speedy trial, there is no

indication that Petitioner actively asserted his speedy trial right in the trial court.  The third Barker factor does not weigh heavily in Petitioner's favor.

With regard to the fourth and final factor, the prejudice to Petitioner, where—as here—the delay was not the result of bad faith or a deliberate attempt to "hamper the defense," a defendant is required to show he suffered actual prejudice in order to prevail.  *See* United States v. Mitchell, 769 F.2d 1544, 1547 (11th Cir. 1985); *see also* United States v. Villarreal, 613 F.3d 1344, 1355 (11th Cir. 2010).  In Barker, the Court noted that prejudice should be assessed in light of the interests the speedy trial right was designed to protect:  "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  407 U.S. at 532.  Of these three interests, the Supreme Court characterized the third as being the most significant.  *Id.*

Assuming that the delay in this case caused Petitioner anxiety and concern that his rights would not be honored, Petitioner was not subjected to oppressive pre-trial incarceration, since he was already serving another sentence during the entire period of delay.  Further, Petitioner failed to show that the delay in any way affected his ability to adequately prepare or present his defense.  His defense was a sufficiency-of-the-evidence defense, i.e., that the State failed to present sufficient evidence that

proved Petitioner's guilt beyond a reasonable doubt (*see* Ex. B at 56–58, 112–22). Petitioner failed to show that the delay impaired his ability to challenge the sufficiency of the State's evidence. Therefore, the fourth <u>Barker</u> factor does not weigh in Petitioner's favor.

Petitioner failed to demonstrate that the state courts' rejection of his federal speedy trial claim was contrary to or an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to habeas relief on Ground Four.

      E.    <u>Ground Five: "Sentencing error—improperly calculated scoresheet.</u>

Petitioner alleges his Criminal Punishment Code Scoresheet was improperly calculated as 42.6 points instead of 35.2 points (ECF No. 1 at 12; ECF No. 24 at 4–5). Petitioner alleges there was a mathematical error in the calculation of points assessed for his prior criminal record, which resulted in an increase of 1.8 points. He also argues that he should not have been assessed 1.6 points for his prior conviction for a drug offense because the conviction was more than 10 years old. Petitioner further contends he should not have been assessed victim injury points, which contributed 4 points to his score.

Respondent asserts Petitioner presented this claim to the state court in Ground Five of his third amended Rule 3.850 motion (ECF No. 21 at 20–21). Respondent asserts the state court noted that the mathematical error resulted in an increase of 1.8 points, but denied relief because the error was harmless. Respondent contends this was not contrary to or an unreasonable application of clearly established federal law (*id.*).

"Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes." Carrizales v. Wainwright, 699 F.2d 1053, 1054–55 (11th Cir. 1983). "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Id.* at 1055; *see also* Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) ("The writ of habeas corpus, 28 U.S.C. § 2254 . . ., was not enacted to enforce State-created rights."). As the Eleventh Circuit has explained, "[i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).

Here, the propriety of assessing points based upon victim injury and Petitioner's prior criminal record are purely matters of state law. Further, the 1.8-point

mathematical error does not present an error of constitutional dimension, because it was harmless. Regardless of whether Petitioner's total sentence points were 42.6 or 40.8, Petitioner's lowest permissible sentence was a non-prison sanction, and the statutory maximum sentence was 5 years in prison. The court imposed the sentence recommended by the State, i.e., 2 years in prison, to run consecutively to the sentence Petitioner was currently serving (*see* Ex. B at 145–47). Petitioner has not shown that the State's sentencing recommendation, or the court's sentencing decision, was affected by the 1.8-point miscalculation. Petitioner thus failed to show that Ground Five presents an issue of constitutional dimension, let alone one that merits federal habeas relief.

F.    Ground Six, sub-part (A): "[Counsel's] failure to move for discharge on speedy trial violation grounds."

Petitioner alleges defense counsel contacted him on November 21, 2011, and informed him that he had been appointed to the case (ECF No. 1 at 12; ECF No. 1-1 at 3; ECF No. 24 at 5). Petitioner alleges he instructed counsel to move for discharge on speedy trial grounds, but counsel failed to do so.

Respondent asserts Petitioner presented this claim in Ground Six of his Rule 3.850 motion, and the state court adjudicated the merits (ECF No. 21 at 22–23). Respondent contends the state court's adjudication was not contrary to or an

unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of fact.

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of Strickland is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms.  Strickland, 466 U.S. at 688–89, 691.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist

would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones v. GDCP Warden, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. Id. (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. Williamson v. Fla. Dep't of Corr., 805 F.3d 1009, 1016 (11th Cir. 2015) (citing Richter, 562 U.S. at 112). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Id. at 694–95. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. See Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Richter, 131 S. Ct. at 788.  As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).

### 2.    Federal Review of State Court Decision

Petitioner presented this claim of ineffective assistance of trial counsel ("IATC") as Ground Six, sub-claim (1) of his Rule 3.850 motion (Ex. O at 91).  In the

state circuit court's written decision denying the claim, the court correctly stated the

deficient performance and prejudice prongs of the <u>Strickland</u> standard as the

applicable legal standard (*id.* at 144–45).  The court adjudicated the claim as follows:

> This claim is insufficient.  "To plead a facially sufficient claim of prejudice, a movant must allege specific facts that demonstrate that the State could not have brought the movant to trial within the recapture window provided in rule 3.191(p)(3) or that demonstrate that the quality of the State's evidence would have diminished if the State had been forced to proceed within the fifteen-day recapture window."  <u>Remak v. State</u>, 2 So. 3d 3, 6 (Fla. 2d DCA 2014).  The Defendant has not done so.

> The Defendant further claims counsel should have moved for dismissal based on a violation of the Defendant's constitutional right to a speedy trial.

> The constitutional right to a speedy trial attaches upon arrest, filing of an indictment or an information, or other official accusation.  <u>See</u> <u>United States v. MacDonald</u>, 456 U.S. 1, 6 (1982).  Determining whether a violation of the constitutional right to speedy trial has occurred includes consideration of federal case law, especially <u>Barker v. Wingo</u>, 407 U. S. 514 (1972), which identifies four guiding factors.  <u>See</u> <u>State v. Roundtree</u>, 438 So. 2d 68 (Fla. 2d DCA 1983); <u>Howell v. State</u>, 418 So. 2d 1164 (Fla. 1st DCA 1982).  These four factors are (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has timely asserted his rights; (4) the existence of actual prejudice as a result of the delay.  No single factor is either necessary or determinative, but a balancing of the four factors must be done to reach a just conclusion.

> <u>Seymour v. State</u>, 738 So. 2d 984, 985 (Fla. 2d DCA 1999).

> The Defendant has not provided any allegations as to the reason for the delay, whether the Defendant timely asserted his rights and whether any actual prejudice resulted as a result of the delay. Thus, the Defendant's claim is insufficient.

(Ex. O at 145). The First DCA affirmed the decision without written opinion (Ex. R).

This federal court must defer to the state court's determination that Petitioner failed to show a meritorious basis for defense counsel to seek discharge on state speedy trial grounds. Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted)[5]; *see also* Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court

---

[5] Alvord was superseded by statute on other grounds as noted in Hargrove v. Solomon, 227 F. App'x 806 (11th Cir. 2007).

misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); <u>Herring v. Sec'y Dep't of Corr.</u>, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (quoting <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Further, for the reasons discussed supra in Ground Four, the state court reasonably concluded that Petitioner failed to show a meritorious basis for defense counsel to argue a federal speedy trial violation.

Petitioner failed to demonstrate that the state court's rejection of his IATC claim, based upon counsel's failure to assert Petitioner's speedy trial rights, was based upon an unreasonable determination of fact, or was contrary to or an unreasonable

application of <u>Strickland</u>.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Six, subpart (A).

G.    <u>Ground Six, sub-part (B):  "[Counsel's] failure to object to discovery violation."</u>

Petitioner alleges on June 25, 2012 and September 18, 2012, he instructed defense counsel to subpoena the materials which are the subject of his <u>Brady</u> claim, i.e., the security surveillance video, use of force video, photo of Officer Russano's face, and disciplinary report and hearing information  (ECF No. 1 at 13; ECF No. 1-1 at 2; ECF No. 24 at 5–6).  Petitioner acknowledges that prior to trial, defense counsel filed a discovery request for these materials, but Petitioner argues counsel should have chosen a more effective means of obtaining them, i.e., a subpoena.  Petitioner alleges counsel's failure to subpoena the materials deprived him of the ability to present a complete defense.

Respondent asserts Petitioner presented this claim in Ground Six of his Rule 3.850 motion, and the state court adjudicated the merits (ECF No. 21 at 23–25). Respondent contends the state court's adjudication was not contrary to or an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of fact.

1.    Clearly Established Federal Law

The <u>Strickland</u> standard governs this claim.

### 2.    Federal Review of State Court Decision

Petitioner presented this IATC claim as Ground Six, sub-claim (2) of his Rule

3.850 motion (Ex. O at 92).  The circuit court adjudicated the claim as follows:

> The Defendant has not alleged sufficient factual support for a claim that this evidence (security surveillance video, use of force video, disciplinary report hearing information and photos) existed.  The Defendant has not alleged factual support for a claim that the State violated rule 3.220.  Furthermore, the Defendant has not sufficiently alleged facts showing <u>Strickland</u> prejudice as a result of counsel's alleged failure to object to a discovery violation.  "A mere conclusory allegation that the outcome would have been different is insufficient to state a claim of prejudice under <u>Strickland</u>; the defendant must demonstrate how, if counsel had acted otherwise, a reasonable probability exists that that the outcome would have been different—that is, a probability sufficient to undermine confidence in the outcome." <u>Jones v. State</u>, 998 So. 2d 573, 584 (Fla. 2008).

> To the extent the Defendant is alleging that counsel was deficient for failing to raise a claim under <u>Brady</u>, as the Court has already explained, any <u>Brady</u> claim is insufficiently pled.  <u>See</u> <u>Way v. State</u>, 760 So. 2d 903 (Fla. 2000).  In addition, the Defendant has not sufficiently alleged a claim of ineffective assistance of counsel as to this issue.  In addition, the record show counsel made a request to the State for any such evidence.

(Ex. O at 145–46).  The First DCA affirmed the decision without written opinion (Ex.

R).

For the reasons previously discussed in Ground Three, the state court reasonably concluded that Petitioner failed to show a reasonable probability that the result of his trial would have been different if defense counsel had sought to compel the State to produce the videos, photo, and disciplinary hearing information, or if counsel had raised a <u>Brady</u> claim with respect these materials.  Petitioner failed to demonstrate that the state court's rejection of his IATC claim was based upon an unreasonable determination of fact, or was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Six, subpart (B).

> H.    <u>Ground Six, sub-part (C):  "[Counsel's] failure to challenge sufficiency of evidence."</u>

Petitioner alleges the State failed to prove the "bodily harm" and intent elements of the battery charge (ECF No. 1 at 13; ECF No. 24 at 6).  Petitioner alleges the only evidence of bodily harm was Officer Russano's testimony that he was bleeding, but the medical evidence refuted Russano's testimony.  Petitioner also alleges the officers' testimony, that Petitioner had no prior behavioral incidents, and that Petitioner was aware of the rules of the recreation yard and the consequences of violating the rules, negated the intent element.  Petitioner argues defense counsel should have moved for a judgment of acquittal ("JOA").

Respondent asserts Petitioner presented this claim in Ground Six of his Rule 3.850 motion, and the state court adjudicated the merits (ECF No. 21 at 25–26). Respondent contends the state court's adjudication was not contrary to or an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of fact.

      1.     Clearly Established Federal Law

The <u>Strickland</u> standard governs this claim.

      2.     Federal Review of State Court Decision

Petitioner presented this IATC claim as Ground Six, sub-claim (3) of his Rule 3.850 motion (Ex. O at 92).  The circuit court adjudicated the claim as follows:

> The Defendant claims that his counsel was ineffective for failing to challenge the sufficiency of the evidence.  Such a claim is cognizable in a motion for post-conviction relief.  However, this claim is conclusively refuted by the record.
>
> A motion for judgment of acquittal tests sufficiency of the evidence.  <u>Harris v. State</u>, 954 So. 2d 1260 (Fla. 5th DCA 2007).  In other words, the issue to be decided is whether the evidence presented is legally adequate to permit a verdict.  <u>Geibel v. State</u>, 817 So. 2d 1042 (Fla 2d DCA 2002)·  "A trial court should not grant a motion for judgment of acquittal unless the evidence, when viewed in the light most favorable to the State, fails to establish a prima facie case of guilt."  <u>State v. Odom</u>, 862 So. 2d 56, 59 (Fla. 2d DCA 2003).
>
> In this case, the victim testified that he was head butted by the Defendant and kicked by the Defendant.  The victim testified that the

incident took place at Santa Rosa Correctional Institution while the victim was a correctional officer wearing a uniform reflecting as much. A second eye witness testified that he saw the Defendant batter the victim. The evidence indicated that the victim suffered an abrasion on his face.

It is true that Defendant's counsel did not file a motion for judgment of acquittal in this case. Attachment 1, at 92, 101 and 139–140. Even if counsel had made a motion for judgment of acquittal, the record conclusively demonstrates that such a motion would have been denied. "Trial counsel cannot be deemed ineffective for a failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding." Teffeteller v. Dugger, 734 So. 2d 1009, 1023 (Fla. 1999).

(Ex. O at 146–47). The First DCA affirmed the decision without written opinion (Ex. R).

In light of the evidence presented at trial (as outlined above in Ground One), the state court reasonably concluded that Petitioner failed to show a reasonable probability that the trial court would have granted a motion for JOA if defense counsel had made one. Therefore, Petitioner is not entitled to federal habeas relief on Ground Six, subpart (C).

I.    Ground Six, sub-part (D): "[Counsel's] failure to object to jury instruction."

Petitioner alleges the information charged alternative forms of battery on a law enforcement officer, i.e., the "intentionally touched or struck" theory and the

"intentionally caused bodily harm" theory (ECF No. 1 at 13–14; ECF No. 1-1 at 3; ECF No. 24 at 6).  Petitioner alleges the jury was instructed on only one theory, the "intentionally touched or struck" theory.  Petitioner further alleges the jury returned a general verdict without specifying the theory upon which the verdict was based. Petitioner argues defense counsel should have objected to the jury instruction on the ground that it omitted a material element of the crime.

Respondent asserts Petitioner presented this claim in Ground Six of his Rule 3.850 motion, and the state court adjudicated the merits (ECF No. 21 at 26–29). Respondent contends the state court's adjudication was not contrary to or an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of fact.

      1.     Clearly Established Federal Law

The Strickland standard governs this claim.

      2.     Federal Review of State Court Decision

Petitioner presented this IATC claim as Ground Six, sub-claim (4) of his Rule 3.850 motion (Ex. O at 94).  The circuit court adjudicated the claim as follows:

> The Defendant claims that his counsel was ineffective for failing to object when the jury was not instructed on the "bodily harm" form of battery.  Attachment 1, at 98.  However, the record conclusively shows that counsel was not deficient nor was the Defendant was not [sic]

prejudiced. The jury was properly instructed on the form of battery that was at issue in the case. Attachment 1, at 127–128.

The Standard Jury Instruction on Battery Law Enforcement Officer, Firefighter, etc., reads as follows:

> **To prove the crime of Battery on a [Law Enforcement Officer] [Firefighter] [Emergency Medical Care Provider] [Traffic Accident Investigation Officer] [Traffic Infraction Enforcement Officer] [Parking Enforcement Specialist] [Security Officer Employed by the Board of Trustees of a Community College] [Law Enforcement Explorer] [Non-sworn Law Enforcement Agency Employee Certified as an Agency Inspector] [Blood Alcohol Analyst] [Breath Test Operator] [Railroad Special Officer] [Licensed Security Officer], the State must prove the following four elements beyond a reasonable doubt:**

> **1.** (Defendant) **intentionally**

> [**touched or struck** (victim) **against [his] [her] will**].
> [**caused bodily harm to** (victim)].

> 2. (Victim) **was a [law enforcement officer] [firefighter] [emergency medical care provider] [traffic accident investigation officer] [traffic infraction enforcement officer] [parking enforcement specialist] [security officer employed by the board of trustees of a community college] [law enforcement explorer] [non-sworn law enforcement agency employee who was certified as an agency inspector] [blood alcohol analyst] [breath test operator while such employee was in uniform and engaged in processing, testing, evaluating, analyzing, or transporting a person who was detained or under arrest for DUI] [railroad special officer] [licensed security officer who wore a uniform that bore**

**at least one patch or emblem that was visible at all times that clearly identified the employing agency and that clearly identified the person as a licensed security officer].**

3. (Defendant) **knew** (victim) **was a [law enforcement officer] [firefighter] [emergency medical care provider] [traffic accident investigation officer] [traffic infraction enforcement officer] [parking enforcement specialist] [security officer employed by the board of trustees of a community college] [law enforcement explorer] [non-sworn law enforcement agency employee who was certified as an agency inspector] [blood alcohol analyst] [breath test operator] [railroad special officer] [licensed security officer]**.

4. (Victim) **was engaged in the lawful performance of [his] [her] duties when the battery was committed**.

Both "Defendant intentionally touched or struck (victim) against [his] [her] will" and "Defendant intentionally caused bodily harm to (victim)" are listed as the first element. *That does not mean that both parts should be read in given case*. These parts of the instruction are in brackets. As the Florida Supreme Court has explained in "How to Use" the Standard Jury Instructions, "Brackets are used exclusively to express variables within the text that is to be spoken aloud to the jury. [O]nly the applicable variables enclosed in brackets should be read aloud."[FN 3]

Also, Florida law provides that the "offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other *or* intentionally causes bodily harm to another person." § 784.03, Fla. Stat. (emphasis added). Generally, battery is a misdemeanor. § 784.03(l)(b). However, when battery committed [sic] on a law enforcement officer such as a correctional officer, the crime is a third degree felony. § 784.07(2)(b), Fla. Stat.

> The Defendant has shown no error whatsoever with the jury instructions given by the Court in this case. Because the State did not need to prove bodily harm to prove the crime of battery was committed, there was no need to instruct the jury in this case on bodily harm. Thus, the Defendant has not made any sufficient allegation of ineffective assistance of counsel for failing to object to the jury instruction at issue.

(Ex. O at 147–49) (footnote omitted). The First DCA affirmed the decision without written opinion (Ex. R).

Petitioner failed to show that defense counsel had a meritorious basis for objecting to the jury instruction. Therefore, counsel's failure to object cannot be deemed deficient performance, and Petitioner cannot show he was prejudiced by counsel's failure to object. The state court's rejection of Petitioner's IATC claim was not based upon an unreasonable determination of fact, nor was it contrary to or an unreasonable application of Strickland. Therefore, Petitioner is not entitled to federal habeas relief on Ground Six, subpart (D).

J.    Ground Six, sub-part (E):  "[Counsel's] failure to object to improperly calculated scoresheet."

Petitioner alleges his sentencing scoresheet improperly assessed 7.4 points as follows:  4 points for victim injury, 1.6 points for a prior conviction that was over 10 years old, and 1.8 "mystery" points (i.e., a mathematical error) (ECF No. 1 at 14; ECF No. 24 at 6–7). Petitioner alleges if the scoresheet had been properly calculated, his

permissible sentencing guidelines range would have been a maximum of 380 days,

which was significantly less than the 2-year sentence he received.  Petitioner alleges

defense counsel's failure to object to the miscalculation constituted deficient

performance.  He contends he would have received a lesser sentence if counsel had

objected to the scoresheet.

Respondent asserts Petitioner presented this claim in Ground Six of his Rule

3.850 motion, and the state court adjudicated the merits (ECF No. 21 at 29–30).

Respondent contends the state court's adjudication was not contrary to or an

unreasonable application of clearly established federal law, nor was it based upon an

unreasonable determination of fact.

> 1.    Clearly Established Federal Law

The Strickland standard governs this claim.

> 2.    Federal Review of State Court Decision

Petitioner presented this IATC claim as Ground Six, sub-claim (5) of his Rule

3.850 motion (Ex. O at 94).  The circuit court adjudicated the claim as follows:

> The Defendant raises a claim of scoresheet error.  When a
> Defendant is sentenced under an erroneous scoresheet, and the claim is
> raised under rule 3.850, the error is harmless if the same sentence "would
> have been" imposed.  State v. Anderson, 905 So. 2d 111 (Fla. 2005).  In
> other words, if the record conclusively establishes the Defendant would

have received the same sentence even under the correct scoresheet, the Defendant is not entitled to relief.

In this case, the State concedes that the Defendant's scoresheet was miscalculated in that the total sentencing points were 42.6, when the total should have been 40.8 points, a difference of 1.8 sentencing points. However, regardless of any scoresheet error at issue,[FN 2] the Defendant could have been sentenced anywhere from a non-state prison sanction to five years in state prison. Attachment 2. Thus, the scoresheet itself in the Defendant's case imposed no real limitation on this Court in terms of what sentence could be imposed. Because any guidance offered by the scoresheet remains unchanged despite the error with the scoresheet, and because the undersigned Circuit Judge is who imposed the sentence at issue, the Court finds that the record conclusively establishes that the Defendant would have received the same sentence under a corrected scoresheet and the scoresheet error was harmless. Attachment 1 at 145–148 and Attachment 2.

> [FN 2:  The four points for victim injury were appropriate as the State presented evidence of slight injury at trial. Attachment 1, at 88.  Furthermore a conviction more than 10 years old is properly scored when there are other criminal convictions within are [sic] within the 10 year period. See § 921.0021(5), Fla. Stat.; State v. Hodges, 151 So. 3d 531 (Fla. 3d DCA 2014).  Even if the Defendant's scoresheet reflected 35.2 points it would not have impacted the sentence the Defendant received.]

. . . .

The Defendant's counsel did not object to the scoresheet. Attachment 1, at 145.  However, the Defendant was not prejudiced by counsel's failure to object to the 1.8 point error in the Defendant's scoresheet.   As the Court has previously explained, the record conclusively establishes that the Defendant would have received the same sentence under a corrected scoresheet and the scoresheet error was harmless.

(Ex. O at 143–44, 149).  The First DCA affirmed the decision without written opinion (Ex. R).

This federal court must defer to the state court's determination that the assessment of points for victim injury and prior convictions was proper under state law.  This court must also defer to the state court's determination that the 1.8-point mathematical error did not change the permissible sentence range of a non-state prison sanction up to 5 years in prison.  Further, the transcript of Petitioner's sentencing shows that the sentencing court adopted the State's sentencing recommendation of a 2-year prison sentence, to run consecutively to the sentence Petitioner was already serving (Ex. B at 145, 147).  And the trial court itself stated it would have imposed the same sentence under a corrected scoresheet.  Petitioner failed to show a reasonable probability that the State's recommendation, or the court's sentence, would have been less than 2 years if Petitioner's total sentence points had been 40.8 instead of 42.6.

Petitioner failed to demonstrate that the state court's rejection of his IATC claim was based upon an unreasonable determination of fact, or was contrary to or an unreasonable application of Strickland.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Six, subpart (E).

K.    Ground Six, sub-part (F):  "[Counsel's] failure to impeach witnesses."

Petitioner claims that defense counsel was ineffective for failing to impeach the trial testimony of Correctional Officers Russano and Kosmos (ECF No. 1 at 14–15; ECF No. 24 at 7).  With respect to Officer Russano, Petitioner alleges Officer Russano testified at trial that the "whole incident" lasted 5–10 minutes, but Russano stated in an FDOC incident report that the battery occurred from 7:30–7:32 a.m. (*id.* at 14).  Petitioner also alleges defense counsel should have obtained and used the surveillance video from the dormitory to impeach Officer Russano's trial testimony that two officers were present at Petitioner's cell door when it was opened (*id.* at 15).  Petitioner argues this would have shown that Russano was not lawfully performing his duty when he escorted Petitioner to the recreation yard alone (*id.*).

With respect to Officer Kosmos, Petitioner alleges Kosmos testified at trial that he did not see what started the incident, but Kosmos stated in his FDOC incident report that he witnessed the whole incident (ECF No. 1 at 15).  Petitioner further alleges Officer Kosmos stated in his deposition that he recalled the incident but also stated in his deposition he did not recall Petitioner kicking Officer Russano twice (*id.*).

Petitioner contends if defense counsel had impeached Officers Russano and Kosmos as described above, the jury would not have been able to find sufficient

evidence to satisfy the first and fourth elements of battery on a law enforcement

officer (i.e., that Petitioner intentionally touched or struck Russano, and that Russano

was lawfully performing his duty at the time of the battery) (ECF No. 1 at 15).

Respondent asserts Petitioner presented this claim in Ground Six of his Rule

3.850 motion, and the state court adjudicated the merits (ECF No. 21 at 30–32).

Respondent contends the state court's adjudication was not contrary to or an

unreasonable application of clearly established federal law, nor was it based upon an

unreasonable determination of fact.

        1.      Clearly Established Federal Law

The Strickland standard governs this claim.

        2.      Federal Review of State Court Decision

Petitioner presented this IATC claim as Ground Six, sub-claim (6) of his Rule

3.850 motion (Ex. O at 94).  The circuit court adjudicated the claim as follows:

> This claim is facially insufficient.  The Defendant has not
> sufficiently alleged facts showing had [sic] but for counsel's purported
> deficiency there is a reasonable probability the outcome of the trial
> would have been different.[FN 4]
>
> > [FN 4:  The Court would note that the Defendant's claim
> > that counsel should have impeached the victim's testimony
> > and Kosmos' testimony with prior inconsistent statements
> > is insufficient.  "A prior statement of a witness is
> > admissible to impeach credibility only if it is in fact

> inconsistent with the trial testimony." Charles W. Ehrhardt,
> Florida Evidence, § 608.4, at 629 (2015 ed.); see also,
> James v. State, 765 So. 2d 763 (Fla. 1st DCA 2000). As
> Professor Ehrhardt has explained, "'Nit-picking' [is] not
> permitted under the guise of prior inconsistent statements."
> Id., at 632.]

(Ex. O at 149–50). The First DCA affirmed the decision without written opinion (Ex.

R).

Petitioner failed to show that the surveillance video would have impeached

Officer Russano's testimony. Petitioner alleges the video would have shown that

Russano was alone when Petitioner's cell door was opened for the escort to the

recreation yard. Russano testified as follows:

> Q.    Did you see the defendant Antonio Woodson that day
> [March 16, 2010]?
>
> A.    Only when I pulled him off, you know, rec, recreation.
>
> Q.    What do you mean by pulled him out for recreation?
>
> A.    Well, you have to go upstairs, just door to door to make sure
> that they have their clothes in their hands. They're still in their boxer
> shorts. We search all their items and put them through the portal flap,
> the cuff flap, they get their clothes back, cuff them, and then roll the
> door.
>
> Q.    Are those safety precautions?
>
> A.    Yes.

Q.     And when you say roll the door, what does that mean?

A.     I have to—you have to have two officers present.  I have to let the officer in the officer station roll the door, let them know that go ahead and roll that certain door.

Q.     Is that physically opening the door for them to come out?

A.     It opens electronically, yes.

Q.     All right.  And then what was your process for taking him to the recreation yard?

A.     After we got him through all that procedure, I took him down stairs and out through the rec yard.

Q.     Was there anybody else when with [sic] the two of you when that happened?

A.     I escorted him and there were several other officers that were in that wing that were also escorting inmates.

Q.     But you were escorting the defendant?

A.     Yes.

Q.     And is it the process to escort the inmates one at a time?

A.     Yes, in that wing, and that CM one, yes.

(Ex. B at 63–65).   Officer Russano then described how Petitioner refused his command to stop yelling, and then pulled away from him and head-butted and kicked him (*id.* at 65–67).

As previously discussed, Petitioner's allegation as to what the surveillance video showed is purely speculative. Furthermore, even if the video showed that only Officer Russano was present when Petitioner's door was opened, such evidence is not in fact inconsistent with Officer Russano's testimony. Russano testified, "I have to—you have to have two officers present." He did not testify that two officers were actually present. Additionally, the video would not have shown that Officer Russano was not lawfully performing his duty when Petitioner head-butted and kicked him on the recreation yard. As discussed *supra*, at the time of the battery, FDOC policy required that there be one officer with each close management inmate when the inmate is out of his cell within the unit. *See* Fla. Admin. Code r. 33-601.800(14)(d). Thus, the video would have not refuted the fourth element of the charge. The state court reasonably rejected this claim.

Petitioner also failed to show that Officer Russano's FDOC incident report would have impeached his trial testimony with regard to the timing of the battery. As previously noted, Russano's testimony on this issue was the following:

> Q [by defense counsel]. And I know we're sitting here talking about it in great detail but the whole thing actually happened pretty quick, right?
>
> A. Yes.
> . . . .

Case No.: 3:16cv180/RV/EMT

> Q.    How long did the whole incident take?
>
> A.    It wouldn't have took [sic] more than—you know, it happened so fast—about five minutes, ten minutes at most.
>
> Q.    Just a pretty quick incident?
>
> A.    My part of it, yes,  It was pretty quick.

(Ex. B at 75–77).  Again, even if Officer Russano stated in his FDOC incident report that the battery occurred during a three-minute period, this prior statement was not in fact inconsistent with his trial testimony that the "whole incident" was "pretty quick" and took approximately 5 minutes.  Therefore, the state court's rejection of this claim was reasonable.

With respect to Officer Kosmos, Petitioner alleges Kosmos testified at trial that he did not see what started the incident, but Kosmos stated in his FDOC incident report that he witnessed the whole incident.  The portion of Officer Kosmos' trial testimony relevant to this claim is the following:

> Q [by the prosecutor].      Did you see an incident . . . that occurred between the defendant Antonio Woodson and Officer John Russano?
>
> A.    Yes, I did.
>
> Q.    What did you see happen?
>
> A.    Officer Russano was bringing inmate Woodson out for rec. I was going back in to get another inmate and there was an incident.  I

seen [sic] inmate Woodson head butt Officer Russano, and I immediately focused my attention on that to try to assist Officer Russano and get the inmate off of him.

. . . .

Q [by defense counsel].    And did you—did you see what started all of this?

A.    No, sir.

(Ex. B at 79–80, 82).  Even if Officer Kosmos stated in his FDOC incident report that he witnessed the whole incident, that statement was not in fact inconsistent with his trial testimony that he did not see what started, or caused, the incident.  Therefore, the state court's rejection of this claim was reasonable.

Petitioner additionally alleges Officer Kosmos stated in his deposition that he recalled the incident but also stated in his deposition he did not recall Petitioner kicking Officer Russano twice.   Petitioner has not shown that either of these statements was in fact inconsistent with Officer Kosmos' trial testimony.  Therefore, the state court reasonably rejected this claim.

Petitioner failed to demonstrate that the state court's rejection of his IATC claim was based upon an unreasonable determination of fact, or was contrary to or an unreasonable application of Strickland.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Six, subpart (F).

L.    Ground Seven:  "Ineffective assistance of appellate counsel."

Petitioner contends his appellate counsel was ineffective for filing an <u>Anders</u> brief, instead of raising the speedy trial issue and the jury instruction issue on direct appeal (ECF No. 1 at 15; ECF No. 1-1 at 3; ECF No. 24 at 7–8).

Respondent contends Petitioner's claim is unexhausted and procedurally barred (ECF No. 21 at 32–37).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[6] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each

---

[6] Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
 (A)  the applicant has exhausted the remedies available in the courts of the State; or
  (B) (i)  there is an absence of available State corrective process; or
   (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Case No.:  3:16cv180/RV/EMT

appropriate state court, alerting that court to the federal nature of the claim.  Duncan,

513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144

L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

An issue that was not properly presented to the state court and which can no

longer be litigated under state procedural rules is considered procedurally defaulted,

i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299,

1302–03 (11th Cir. 1999).  The federal court must thus determine whether any future

attempt to exhaust state remedies would be futile under the state's procedural default

doctrine.  *Id.* at 1303.

To overcome a procedural default, the petitioner must show cause and prejudice

or a fundamental miscarriage of justice in order for the federal habeas court to reach

the merits of a claim.  Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v.

Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111

S. Ct. 731, 112 L. Ed. 2d 812 (1991).  "For cause to exist, an external impediment,

whether it be governmental interference or the reasonable unavailability of the factual

basis for the claim, must have prevented petitioner from raising the claim."

McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991)

(quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397

(1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id.

Under Florida law, claims of ineffective assistance of appellate counsel ("IAAC") are properly presented in a petition filed in the court to which the appeal was taken, which was the First DCA in Petitioner's case.  See Fla. R. App. P. 9.141(d). Petitioner did not file a petition alleging IAAC in the First DCA or any state court. Therefore, his IAAC claim is unexhausted.  Additionally, any future attempt to exhaust state remedies would be futile under Florida's procedural default doctrine, since Rule 9.141(d)(5) requires a petition alleging IAAC to be filed not more than two years after the judgment and sentence become final on direct review.  Fla. R. App. P.

9.141(d)(5). Under Florida law, Petitioner's direct review became final when the First DCA issued its mandate in the direct appeal on September 4, 2013 (Ex. H). Therefore, any attempt to return to the First DCA now would be futile as the state procedural time limitation would bar the court from reaching the merits of the petition.

Petitioner has not shown that he is entitled to review of his unexhausted IAAC claim through any recognized exception to the procedural bar. Therefore, he is not entitled to federal habeas relief on Ground Seven.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting

§ 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 27th day of October 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**